**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**AIKEN DIVISION**

| | |
|---|---|
| Jeff Brown, on behalf of himself and all others similarly situated, ) ) ) Plaintiff, ) v. ) ) Goodman Manufacturing Company, L.P., ) Goodman Global, Inc., and Goodman ) Company, L.P., ) ) Defendants. ) _____ ) | Civil Action No. 1:13-cv-03169-JMC  **ORDER AND OPINION** |

In this products liability action, Plaintiff Jeff Brown, on behalf of himself and all others similarly situated ("Plaintiff"), alleges that Defendants Goodman Manufacturing Company, L.P. ("GMC"), Goodman Global, Inc., and Goodman Company, L.P., (collectively "Defendants") manufactured and sold defective air conditioners, air handlers and heat pumps. (ECF No. 1.) Plaintiff asserts causes of action against Defendant for breach of express warranty, breach of the implied warranty of merchantability, and unjust enrichment. (Id. at 30–32.)

This matter is before the court on Defendants' Motion to Dismiss the Complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) ("Rule 12(b)(6) motion"). (ECF No. 11.) For the reasons set forth below, the court **DENIES** Defendants' Rule 12(b)(6) motion as to Plaintiff's Complaint.

## I.     RELEVANT BACKGROUND TO PENDING MOTION

Defendants engineer, manufacture, distribute, and market heating, ventilation, and air conditioning ("HVAC") products for residential and light commercial use. (ECF No. 1 at 2 ¶ 2.) Plaintiff alleges that he purchased Defendants' heat pump for his mobile home in early April 2008 and that it was installed by B&E Heating & Air ("B&E"). (Id. at 13 ¶ 41.) The heat pump

came with a "Limited Warranty"[1] that provided in relevant part as follows:

> This heating or air condition unit is warranted by Goodman Manufacturing Company, L.P. ("Goodman") to be free from defects in materials and workmanship that affect performance under normal use and maintenance, as described below:
>
> - To the original registered owner and his or her spouse ("owner"), all parts are warranted for a period of 10 years or for as long as the owner owns the home in which the unit was originally installed (whoever ends first), except as provided below. However, this warranty applies only if: 1) The unit is installed in an owner-occupied, single family residence, and 2) The unit is properly registered with Goodman online within 60 days after the original installation . . . .
>
> - If the above warranty does not apply, then all parts are warranted for a period of 5 years.
>
> The warranty period begins on a date of the original installation. Where a product is installed in a newly constructed home; the date of installation is the date the homeowner purchased the home from the builder. If that date cannot be verified, the warranty period begins three months from the date of manufacture (indicated by the first four digits of the serial number (yymm)).
>
> As its only responsibility, and your only remedy, Goodman will furnish a replacement part, without charge for the part only, to replace any part that is found to be defective due to workmanship or materials under normal use and maintenance . . . . These warranties do not apply to labor, freight, or any other cost associated with the service, repair or operation of the unit . . . .
>
> GOODMAN SHALL IN NO EVENT BE LIABLE FOR INCIDENTAL OR CONSEQUENTIAL DAMAGES, INCLUDING BUT NOT LIMITED TO EXTRA UTILITY EXPENSES OR DAMAGES TO PROPERTY.

(ECF No. 11-2.)

Plaintiff alleges that after he purchased his heat pump, he had to replace an "'A' coil" in April 2008 and an unspecified valve in May 2008. (ECF No. 1 at 13 ¶¶ 43-44.) Thereafter, Plaintiff experienced problems with his heat pump in the following months: August 2010 when the heat pump "failed to cool"; October 2010 when it "froze up due to low levels of refrigerant"; February 2011 when it "froze up [again] due to low levels of refrigerant"; and October 2011 when the heat pump "failed to produce heat." (Id. at ¶¶ 45–49.) Plaintiff further alleges that the

---

[1] GMC issued the Limited Warranty covering Plaintiff's heat pump. (ECF No. 11-1 at 6 n.2.)

issues with his heat pump resulted in high electric bills during this time. (Id. at ¶ 47.)

In November 2011, Plaintiff allegedly sent electronic mail to Defendants requesting a complete replacement heat pump, a request Plaintiff claims was rejected on November 17, 2011. (Id. at 14 ¶ 50.) On November 28, 2011, Plaintiff allegedly filed a complaint against Defendants with the Better Business Bureau ("BBB"). (Id. at ¶ 51.) On the next day, November 29, 2011, Plaintiff had B&E replace his heat pump manufactured by Defendants with a heat pump manufactured by Ruud, allegedly incurring $750.00 in "labor costs" for the replacement. (Id. at ¶ 52.) Defendants offered to reimburse Plaintiff for the $750.00 in exchange for a release of claims, but Plaintiff refused the offer. (Id. at ¶ 53.)

On November 21, 2013, Plaintiff filed suit against Defendants in this court alleging claims for breach of express warranty (Count 1), breach of the implied warranty of merchantability (Count 2), and unjust enrichment (Count 3). (ECF No. 1 at 30–32.) On April 7, 2014, Defendants filed a Rule 12(b)(6) motion seeking dismissal of all counts in the Complaint because they "fail to state claims upon which relief may be granted." (ECF No. 11.) Plaintiff filed opposition to Defendants' Rule 12(b)(6) motion on May 14, 2014, to which Defendants filed a Reply Memorandum in Support of Motion to Dismiss on May 30, 2014. (ECF Nos. 22, 27.)

On October 21, 2014, the court heard argument from the parties on the pending Rule 12(b)(6) motion. (See ECF Nos. 38, 39.)

## II.   LEGAL STANDARD AND ANALYSIS

A.   Motions to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)

A motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted "challenges the legal sufficiency of a complaint." Francis v. Giacomelli,

588 F.3d 186, 192 (4th Cir. 2009) (citations omitted); see also Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir.1992) ("A motion to dismiss under Rule 12(b)(6) . . . does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."). To be legally sufficient a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim should not be granted unless it appears certain that the plaintiff can prove no set of facts that would support her claim and would entitle her to relief. Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). When considering a motion to dismiss, the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff. Ostrzenski v. Seigel, 177 F.3d 245, 251 (4th Cir. 1999); Mylan Labs., Inc., 7 F.3d at 1134. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

B.    Defendants' Rule 12(b)(6) Motion in the Context of Plaintiff's Claims

    **1.  Claim for Breach of Express Warranty**

        *i. The Parties' Arguments*

Defendants move to dismiss Plaintiff's breach of express warranty claim on the basis that they complied with their warranty obligations by providing a "no-charge replacement of any defective part during the warranty period." (ECF No. 11-1 at 6–7 (citing Laidlaw Envtl. Servs. v. Honeywell, Inc., 966 F. Supp. 1401, 1415 (D.S.C. 1996) (holding that buyer's breach of

4

warranty claims could not succeed because seller complied with its warranty obligation by "provid[ing] the promised remedy," which was limited to repair or replacement of the allegedly defective product)).)  In support of their position, Defendants assert that limited warranties are permissible under South Carolina law and the Limited Warranty at issue in this matter was neither unconscionable nor failed its essential purpose.  (Id. at 7–9.)

Plaintiff opposes dismissal of his breach of express warranty claim asserting that he has properly alleged Defendants' breach of an express warranty (found in GMC's Limited Warranty) that their HVAC products were "'free from defects in materials and workmanship that affect performance under normal use and maintenance' for a period of either 10 years or 5 years, depending on whether the unit was installed in an owner-occupied, single family residence, and was registered with Goodman within 60 days after the original installation."  (ECF No. 22 at 14 (referencing ECF No. 11-2).)  Moreover, Plaintiff argues that he is not bound by GMC's Limited Warranty because it "(1) fails of its essential purpose or (2) is unconscionable."  (Id. at 14.)  Specifically, Plaintiff asserts that GMC's Limited Warranty failed its essential purpose because replacement of defective parts did not make Defendants' products function properly without the consumer incurring substantial out-of-pocket costs and even then "the products continued to fail even after supposed repair or replacement."  (Id. at 15–18 (citing, e.g., Cox House Moving, Inc. v. Ford Motor Co., No. 7:06-1218-MHM, 2006 WL 2303182, at *4 (D.S.C. Aug. 8, 2006) ("The exclusive remedy in a warranty fails of its essential purpose '[w]here a seller is given a reasonable chance to correct defects and the [product] still fails to function properly' . . . [and] '[i]n such circumstances, § 36-2-719(2) permits the buyer to pursue the other remedies provided by the UCC if the defect substantially affects the value of the buyer's bargain.'") (Internal citation omitted)).)  Plaintiff further asserts that GMC's Limited Warranty is unconscionable

5

because while consumers lacked knowledge of a defect at the time of purchase, Defendants were aware that their products were defective and knew that "mere replacement of the defective part (as offered by the limited warranty) was not an adequate remedy." (Id. at 20 (citing Carlson v. Gen. Motors Corp., 883 F.2d 287, 296 (4th Cir. 1989) ("When a manufacturer is aware that its product is inherently defective, but the buyer has 'no notice of [or] ability to detect' the problem, there is perforce a substantial disparity in the parties' relative bargaining power. In such a case, the presumption is that the buyer's acceptance of limitations on his contractual remedies – including of course any warranty disclaimers – was neither 'knowing' nor 'voluntary,' thereby rendering such limitations unconscionable and ineffective.") (Internal citations omitted)).)

### ii. *The Court's Ruling*

In South Carolina, a seller of product may create an express warranty in a number of ways, including by "[a]ny affirmation of fact or promise, . . . made by the seller to the buyer, whether directly or indirectly, which relates to the goods and becomes part of the basis of the bargain." S.C. Code Ann. § 36-2-313(1) (2003). In addition, "[a]ny description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description." Id. An express warranty cannot be disclaimed.[2] Id. at § 36-2-316(1) (2014) ("If the agreement creates an express warranty words disclaiming it are inoperative."). In order to establish a cause of action for breach of an express warranty, a plaintiff must show "the existence of the warranty, its breach by the failure of the goods to conform to the warranted description, and damages proximately caused by the breach." First State Sav. & Loan v. Phelps, 385 S.E.2d 821, 825 (S.C. 1989) (citations omitted). However, in addition to the foregoing, a plaintiff may not seek other contractual remedies unless the limited

---

[2] GMC's Limited Warranty expressly states that "[t]hese warranties are in lieu of all other express warranties."

6

remedy in an express warranty fails of its essential purpose and is unconscionable.  See S.C. Code Ann. § 36-2-719(b) (2014).

Because the allegations of the Complaint are deemed true in the context of a Rule 12(b)(6) motion, the court finds that Plaintiff has sufficiently alleged each element of a breach of express warranty claim, including the alleged creation of an express warranty based on the language in GMC's Limited Warranty that the heat pump would be "free from defects in materials and workmanship that affect performance under normal use and maintenance" for a period of either 10 years or 5 years, the breach of the express warranty by the failure of the product to conform to the Limited Warranty's description, and damages proximately caused by the breach.  Besse v. Gen. Motors Corp., 317 F. Supp. 2d 646, 654 n.7 (D.S.C. 2004) ("Under South Carolina law, to prevail on a breach of an implied or express warranty claim, Plaintiffs would have to demonstrate the existence of a warranty, its breach, and damages proximately flowing from the breach.").  Moreover, Plaintiff has sufficiently alleged that his damages are not limited to the remedies provided in the Limited Warranty because it failed its essential purpose and is unconscionable.  (See, e.g., ECF No. 1 at 28 ¶ 64 ("Defendants' refusal to pay for diagnostic, labor and Freon costs is unconscionable because they knew, at the time of selling the Goodman Products, that Goodman's coils were defective, caused refrigerant leakage, and that Plaintiff and other consumers would unjustly incur significant out-of-pocket costs to hire a HVAC technician to diagnose the problem, replace the coil, and replace the refrigerant."); 30 ¶ 73 ("The defects in the Goodman Products are latent and not discoverable on reasonable inspection [and] [a]s such, Goodman's express warranty fails in its essential purpose.").) Therefore, the court finds that Plaintiff's Complaint does sufficiently state a claim for breach of an express warranty.  Accordingly, Defendants' Rule 12(b)(6) motion as to Plaintiff's claim for

breach of express warranty is denied.

### 2. Claim for Breach of Implied Warranty of Merchantability

#### i. The Parties' Arguments

Defendants argue that the Complaint's allegations do not sustain Plaintiff's claim for breach of the implied warranty of merchantability because the only defect he experienced was the failure of a condenser coil in April 2011, which part according to Defendants was replaced without additional cost to Plaintiff.  (ECF No. 11-1 at 10–11.)  Defendants further argue that the implied warranty claim fails because Plaintiff did not allege "sufficient factual matter" about his heat pump in the Complaint to give his claims of breach "facial plausibility."  (ECF No. 11-1 at 11 (citing Iqbal, 556 U.S. at 678).)  Finally, Defendants argue that Plaintiff failed to sufficiently state allegations in the Complaint to establish "how his claimed damages . . . actually or proximately resulted from [their] alleged breach" of the implied warranty of merchantability.  (Id.)

Plaintiff asserts that his claim for breach of the implied warranty of merchantability should not be dismissed because the Complaint's allegations do satisfy Fed. R. Civ. P. 8(a)'s pleading requirements.  (ECF No. 22 at 21.)  In this regard, Plaintiff asserts that he specifically pleaded facts alleging why the heat pump was unmerchantable including (1) "the copper coils used in the Goodman Products were too thin . . . [which] design and/or manufacture defect caused premature corrosion and holes or cracks in the coils, resulting in leakage of the refrigerant in the system" (ECF No. 1 at 2 ¶ 3); (2) "Plaintiff repeatedly experienced problems with leakage of refrigerant from the unit" (Id. at 13 ¶ 42); (3) the heat pump in October 2010 "froze up due to low levels of refrigerant" (Id. at ¶ 45); (4) "[i]n August 2010, Plaintiff's Goodman unit failed to cool [and] [t]he unit was found to have low levels of refrigerant because of leaks" (Id. at ¶ 46);

8

(5) "[i]n February 2011, Plaintiff's Goodman unit again froze up due to low levels of refrigerant" (Id. at ¶ 47); (8) "[i]n April 2011, the condenser coil in Plaintiff's Goodman unit was replaced . . . and refrigerant was added to the unit" (Id. at ¶ 48); and (9) "[i]n October 2011, Plaintiff's Goodman unit failed to produce heat" (Id. at ¶ 49). (ECF No. 22 at 21–22.) Moreover, Plaintiff asserts that he sufficiently alleges damages in the Complaint when he (1) references "costs to diagnose the problem, labor costs to repair the defective Goodman unit, costs to replace the refrigerant, costs to replace the defective unit, as well as costs from having to pay high electric bills" and (2) states that "[h]ad Plaintiff been aware of the defect in Goodman Products prior to his purchase, he would not have purchased the Goodman Product or at least would have paid less money for it." (ECF No. 1 at 13 ¶ 47, 14 ¶ 52, 29 ¶ 67, 31 ¶ 82.)

      ii.  *The Court's Ruling*

Defendants move for dismissal of Plaintiff's claim for breach of the implied warranty of merchantability. The South Carolina Commercial Code establishes the implied warranty of merchantability.[3] To recover for breach of the implied warranty of merchantability, a plaintiff must prove (1) a merchant sold goods; (2) the goods were not "merchantable" at the time of sale; (3) the plaintiff or his property were injured by such goods; (4) the defect or other condition amounting to a breach of the implied warranty of merchantability proximately caused the injury; and (5) the plaintiff so injured gave timely notice to the seller. Brunson v. La.-Pac. Corp., 266 F.R.D. 112, 119 (D.S.C. 2010). Subject to certain limitations, South Carolina law generally permits a seller to disclaim the implied warranty of merchantability. The South Carolina Code of

---

[3] "Unless excluded or modified . . . , a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." S.C. Code Ann. § 36–2–314(1) (2014). South Carolina law sets forth several requirements that must be met for goods to be merchantable. See id. at § 36–2–314(2) (2014). For purposes of Plaintiff's claim, the only relevant requirement is that the goods, to be merchantable, "are fit for the ordinary purposes for which such goods are used." Id.

9

Laws specifically provides that "to exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, . . . [l]anguage to exclude the implied warranty of merchantability . . . must be specific, and if the inclusion of such language creates an ambiguity in the contract as a whole it shall be resolved against the seller."  S.C. Code Ann. § 36-2-316(2) (2014).

The Limited Warranty at issue in this matter contains the following language: "**ALL IMPLIED WARRANTIES, INCLUDING BUT NOT LIMITED TO WARRANTIES OF MERCHANTABILITY AND FITNESS FOR PARTICULAR PURPOSE, ARE LIMITED TO THE DURATION OF THIS WARRANTY**.") (ECF No. 11-2.)  The language of the Limited Warranty clearly does not expressly limit or disclaim the implied warranty of merchantability, but it does effectively and legally limit its duration to that of the Limited Warranty.  Without an express disclaimer of the implied warranty of merchantability, the court finds that Plaintiff has sufficiently alleged each element of a claim for breach of the implied warranty of merchantability, including allegations that GMC's Limited Warranty fails its essential purpose and is unconscionable.  Therefore, after accepting all well-pleaded allegations in Plaintiff's Complaint as true and drawing all reasonable factual inferences from those facts in Plaintiff's favor, the court cannot conclude with certainty that Plaintiff is unable to prove any set of facts in support of this implied warranty claim entitling him to relief.  Accordingly, the court denies Defendants' Rule 12(b)(6) motion as to Plaintiff's claim for breach of implied warranty of merchantability.

### 3. Claims for Unjust Enrichment

#### i. *The Parties' Arguments*

Defendants argue that Plaintiff's unjust enrichment claim is barred by the applicable

three-year statute of limitations since he "knew or should have known that he had a claim against Defendants in 2008, but he did not file this suit until November 21, 2013 – over five years later." (ECF No. 11-1 at 13 (citing S.C. Code §§ 15-3-530, -535 (2014); Graham v. Welch, 743 S.E.2d 860, 862 (S.C. Ct. App. 2013) (holding that three-year statute of limitations applies to unjust enrichment claims and begins to run when the allegedly injured party knew or should have known that the claim existed)).) Defendants further argue that even if the unjust enrichment claim is not barred by the statute of limitations, Plaintiff's claim should be dismissed because he has an adequate remedy at law in the Limited Warranty and his allegations fail to establish Defendants' knowing acceptance and retention of a benefit. (Id. at 13–14.)

In support of his claim for unjust enrichment, Plaintiff asserts that consistent with the discovery rule, his claim is not barred by the three-year statute of limitations because he did not know he had claims against Defendants until October 2011, when he was advised by a HVAC technician not to use his heat pump anymore. (ECF No. 22 at 22–23.) Plaintiff further asserts that his unjust enrichment claim is permissible because the federal rules allow him "to plead alternative and inconsistent theories at the pleadings stage" of this matter. (Id. at 24 (citing, e.g., Poloschan v. Simon, No. 9:13-1937-SB-BM, 2014 WL 1713562, at *14 (D.S.C. Apr. 29, 2014) (concluding that it would be improper to dismiss alternative claim at pleading stage); Trevillyan v. APX Alarm Sec. Sys., Inc., No. 2:10-1387-MBS, 2011 WL 11611, at *7, *9 (D.S.C. Jan. 3, 2011) (plaintiff may maintain an action for unjust enrichment despite written agreement because plaintiff may plead in the alternative under Fed. R. Civ. P. 8(d)(2); "[g]enerally a party is not required to make an election of remedies until after the verdict is entered and prior to the entry of judgment")).) Finally, Plaintiff asserts that he has sufficiently pleaded an unjust enrichment claim by alleging that Defendants manufactured defective products, received money for the

defective products, and unjustly retained profits from the sale of the defective products. (Id. at 24–25 (citing ECF No. 1 at 32 ¶¶ 86–87).)

>    *ii. The Court's Ruling*

Before assessing the sufficiency of Plaintiff's unjust enrichment allegations, the court must first determine whether the claim is time-barred. An action for unjust enrichment is governed by a three-year statute of limitations. S.C. Code Ann. § 15-3-530(1) (2005). This statute of limitations is modified by the "discovery rule" wherein "the statute of limitations [only] begins to run from the date the injured party either knows or should know, by the exercise of reasonable diligence, that a cause of action exists for the wrongful conduct." True v. Monteith, 489 S.E.2d 615, 616 (S.C. 1997). The date on which a plaintiff should have discovered his cause or causes of action is an objective question. Graham v. Welch, Roberts & Amburn, LLP, 743 S.E.2d 860, 862 (S.C. Ct. App. 2013). A reviewing court "must decide whether the circumstances of the case would put a person of common knowledge and experience on notice that some right of his has been invaded, or that some claim against another party might exist." Bayle v. S.C. Dep't of Transp., 542 S.E.2d 736, 740 (S.C. Ct. App. 2001) (internal citations omitted). In this regard, "[t]he statute is not delayed until the injured party seeks advice of counsel or develops a full-blown theory of recovery; instead, reasonable diligence requires a plaintiff to act with some promptness." Kelley v. Logan, Jolley, & Smith, LLP, 682 S.E.2d 1, 4–5 (S.C. Ct. App. 2009) (internal citation and quotation marks omitted). However, "[i]f there is conflicting evidence as to whether a claimant knew or should have known he or she had a cause of action, the question is one for the jury." Manios v. Nelson, Mullins, Riley & Scarborough, LLP, 697 S.E.2d 644, 654 (S.C. Ct. App. 2010); see also Maher v. Tietex Corp., 500 S.E.2d 204, 207 (S.C. Ct. App. 1998) ("The jury must resolve conflicting evidence as to whether a claimant

knew or should have known he had a cause of action.") (Citation omitted).

In this matter, the Complaint's allegations establish that Plaintiff began experiencing problems with his heat pump in April and May of 2008. (See ECF No. 1 at 13 ¶¶ 41–44.) However, the court is not persuaded by Defendants' assertion that "a person of common knowledge and experience" would have been put on notice regarding the existence of a claim against Defendants in 2008. If the court draws all reasonable factual inferences from the Complaint's facts in Plaintiff's favor as it is required to do under Fed. R. Civ. P. 12(b)(6), it is apparent that conflicting evidence exists which supports the court finding that a reasonably prudent person would not have been put on notice of a potentially actionable injury until either February 2011, when Plaintiff alleges he had to pay higher than normal electric bills due to a leak in the heat pump's condenser coils discovered by Defendants' distributor representative, or October 2011, when an HVAC technician told Plaintiff to not use his heat pump due to a damaged compressor requiring Plaintiff "to use a small space heater for heat during the cold winter." (ECF No. 1 at 13 ¶¶ 47, 49.) Because the Complaint's allegations present a conflict regarding when Plaintiff knew or should have known he had a cause of action against Defendants, the court denies Defendants' Rule 12(b)(6) motion on statute of limitations grounds as to Plaintiff's claim for unjust enrichment.

Since Plaintiff's unjust enrichment claim is not time-barred by South Carolina's statute of limitations, the court must address the sufficiency of Plaintiff's allegations in the context of Defendants' Rule 12(b)(6) motion. To recover for unjust enrichment, Plaintiff must show the following three elements: (1) a benefit conferred upon the defendant by plaintiff; (2) realization of that benefit by the defendant; and (3) retention by the defendant of the benefit under conditions that make it unjust for it to retain the benefit. Ellis v. Smith Grading & Paving, Inc.,

366 S.E.2d 12, 15 (S.C. Ct. App. 1988). Additionally, a plaintiff may plead unjust enrichment as an alternative claim pursuant to Fed. R. Civ. P. 8(d)(2). Enhance–It, L.L.C. v. Am. Access Tech., Inc., 413 F. Supp. 2d 626, 632 (D.S.C. 2006) ("Under South Carolina law, 'when an identical set of facts entitle the plaintiff to alternative remedies, he may plead and prove his entitlement to either or both; however, the plaintiff may not recover both.'") (quoting Minyard Enter., Inc. v. Se. Chemical & Solvent Co., 184 F.3d 373, 381 (4th Cir. 1999)). Generally, a party is not required to make an election of remedies until after the verdict is entered and prior to the entry of judgment. Id. (citing Minyard Enter., 184 F.3d at 381).

In the Complaint, Plaintiff alleges that he conferred an economic benefit upon Defendants, which they realized by receiving money for their product and retained under circumstances that make it inequitable for such retention. (See ECF No. 1 at 32 ¶¶ 86–87 ("Plaintiff and members of the class conferred an economic benefit upon Goodman, which profited from Plaintiff and members of the class paying money to acquire ownership of their Goodman Units . . . [and] Goodman retained the benefit under circumstances that make it inequitable for Goodman to retain it without paying the value thereof.").) After accepting these and all other well-pleaded allegations in the Complaint as true and drawing all reasonable factual inferences from those facts in Plaintiff's favor, the court finds that Plaintiff has sufficiently stated allegations in support of an unjust enrichment claim in the context of the foregoing law. Accordingly, the court denies the Rule 12(b)(6) motion for failure to adequately state a claim as to Plaintiff's cause of action for unjust enrichment.

C.      Rule 12(b)(6) Motion in the Context of Statutorily Required Notice

### 1. The Parties' Arguments

Defendants also argue that Plaintiff's breach of warranty claims should be dismissed

because he failed to "provide timely notice of the alleged breach[es]" as required by South Carolina law. (ECF No. 11-1 at 12 (citing S.C. Code § 36-2-607(3)(a) (2014) ("[T]he buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy.")).) In this regard, Defendants assert that "[e]ven assuming that the e-mails Mr. Brown sent to Defendants and the BBB complaint constituted valid forms of notice (Compl. ¶¶ 50-51), Mr. Brown failed to allege that he gave such notice within a "reasonable time" as required by South Carolina law." (Id.) More specifically, Defendants assert that Plaintiff experienced problems with his heat pump in April 2008, but waited until November 2011 to communicate with Defendants and such "delayed notice was unreasonable as a matter of law." (Id. (citing Hitachi Elec. Devices, Inc. v. Platinum Techs. Inc., 621 S.E.2d 38, 39–40 (S.C. 2005) (holding that notice provided one year after discovery of defect was untimely as a matter of law)).)

In response to Defendants' notice contentions, Plaintiff argues that he was not required to provide notice to Defendants under South Carolina law because they were manufacturers rather than direct sellers of the heat pump. (ECF No. 22 at 12.) However, even if notice to Defendants was required, Plaintiff asserts that his communications to Defendant in November and December 2011 satisfy the lenient standard applicable in South Carolina and any question about the reasonableness of the notice is a question of fact for the jury. (Id. at 12–13 (citing, e.g., In re MI Windows and Doors, Inc. Prods. Liab. Litig., MDL No. 2333, Civ. No. 2:12-mn-00001, No. 2:11-cv-00167-DCN, 2012 WL 5408563, at *4–5 (D.S.C. Nov. 6, 2012) ("[A]ny good faith communication that reasonably notifies the seller that the buyer is troubled by the transaction should suffice to preserve the buyer's right to pursue UCC remedies in the event it suffers damages from the defect . . . . Whether notice was given within a reasonable time is properly a

question for the jury.")

### 2. The Court's Ruling

Upon consideration of the parties' respective positions, the court finds that the question of "[w]hether notice was given within a reasonable time is properly a question for the jury." Simmons v. Ciba–Geigy Corp., 302 S.E.2d 17, 18 (S.C. 1983) (citing Draffin v. Chrysler Motors Corp., 166 S.E.2d 305, 308 (S.C. 1969) ("[W]e think the issues of notice and opportunity for repair are for the jury under proper instructions by the court.")); see also City of Greenville v. W.R. Grace & Co., 640 F. Supp. 559, 566 (D.S.C. 1986) ("In South Carolina, notice is a question for the jury.") (Citing Simmons).  Therefore, in accordance with the foregoing, the court finds that Defendants are not entitled to dismissal of Plaintiff's Complaint for failure to provide timely notice.

## III.    CONCLUSION

Upon careful consideration of the allegations in the Complaint and the arguments of the parties, the court hereby **DENIES** Defendants' Motion to Dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6).  (ECF No. 11.)

**IT IS SO ORDERED.**

*J. Michelle Childs*

United States District Judge

March 5, 2015
Columbia, South Carolina